NATHANIEL OWENS *vs.* EDWARD DINKINS & others
(and a companion case[1]).

Middlesex.    October 2, 1962. — November 6, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Insurance,* Motor vehicle liability insurance. *Equity Pleading and Practice,* Waiver, Amendment. *Waiver.*

In a suit in equity to reach and apply the obligation of the insurer under a motor vehicle liability insurance policy in satisfaction of a judgment recovered by the plaintiff for personal injuries sustained through the operation of the named insured's automobile by another person, failure of the insurer to plead, pursuant to G. L. c. 231, § 85C, the affirmative defence of absence of consent by the named insured to the operation of the automobile was waived by the plaintiff where there was a full trial of the issue of consent without objection by him.   [107–108]

On appeal from the final decree in a suit in equity, this court allowed a motion by the defendant, not acted upon in the trial court, to amend the answer to set up a certain defence which had been fully tried, although the plaintiff, by not objecting to its being tried, had waived the failure of the defendant to plead the defence.   [108]

[1] The companion case is by Gabriel Aselbekian, executor, against the same defendants.

Evidence did not show to be plainly wrong a finding by the judge in a suit in equity that the owner of a recently purchased automobile insured under a motor vehicle liability insurance policy impliedly consented to operation of the automobile by a family connection by whom it was being operated at the time of a collision with another automobile. [108–109]

In a suit in equity to reach and apply the obligation of the insurer under a motor vehicle liability insurance policy in satisfaction of a judgment recovered by the plaintiff for personal injuries sustained through the operation of the insured automobile while he was riding in it as a guest, it was not open to the defendant insurer in the circumstances to contend in this court on appeal that the plaintiff had not proved that the policy contained guest coverage where the insurer had given the trial judge to understand that the issue in the case was consent of the owner of the automobile to its operation by the one operating it at the time of the plaintiff's injuries, without mention during the trial of any question as to the sufficiency of the coverage of the policy.   [111]

Two BILLS IN EQUITY filed in the Superior Court on September 15, 1960, and October 3, 1960.

The suits were heard by *Wisnioski, J.*

*Robert D. Callahan* for the defendant Globe Indemnity Company.

*Alfred W. Howes* for the plaintiff Aselbekian, executor.

*Herbert Abrams* for the plaintiff Owens.

WHITTEMORE, J.   These are two bills in equity to require the defendant Globe Indemnity Company, as insurer in respect of harm done in the course of the operation of the automobile of the defendant Dinkins, to pay judgments recovered by (1) Mesag Aselbekian, who was injured in a collision on July 1, 1956, between an automobile owned and operated by him and Dinkins's automobile then being driven by Moses C. Gordon, who was killed in the collision, and (2) Nathaniel Owens, injured in the same collision, and at the time a guest in Dinkins's car.   Aselbekian died from unrelated causes and his suit is prosecuted by his executor.

1.   The insurer contends that the final decrees which established its liability should be reversed because the reported evidence shows plainly wrong the finding that Gordon had Dinkins's implied consent to operate Dinkins's automobile.

The insurer failed to plead the affirmative defence of absence of consent as required by G. L. c. 231, § 85C.[2]  The issue, however, was exhaustively tried without any objection of the plaintiffs which was expressly or by necessary implication addressed to the point that it was not in the case.  The plaintiffs, therefore, have waived their right to insist on the failure to plead absence of consent.  *Kagan* v. *Levenson,* 334 Mass. 100, 106.   *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 599.  The insurer and Dinkins, after the hearing but before the judge made his findings, rulings, and orders for decrees, moved to amend their answers to set up the defence.  These motions were not passed on below but we have the power to allow them now.  G. L. c. 231, § 125. *Mitchell* v. *Lonergan,* 285 Mass. 266, 271.  *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 181.  *Sandler* v. *Elliott,* 335 Mass. 576, 589.  *Margolis* v. *Margolis,* 338 Mass. 416, 418.  We deem it appropriate to do so, even though it may not be necessary in view of the waiver, and to decide the substantive issue.

Parts of Dinkins's testimony, if believed, would support if not require these conclusions:  (1) Prior to the accident Gordon had driven Dinkins's car only once, on June 6, 1956, to bring it home at Dinkins's request, and with Dinkins in the car, after it had been bought and registered, and (2) Dinkins did not give express consent to any other use, or know of it, or impliedly consent thereto, or know of Gordon's use of the car on July 1 until the next day when he was told by his brother of the accident.  But this testimony, or parts of it, could be disregarded.  There was also testimony tending to show these facts:  In the twenty-five day period of Dinkins's ownership Gordon used the car on four or five different evenings to drive with a friend or friends from Cambridge to various other places;  Dinkins had bought the car as a family car for the use of his family

---

[2] The statute provides that in such suits as these "it shall be presumed that at the time of such accident or collision such vehicle was being operated, maintained, controlled or used with the express or implied consent of the named person insured in such policy . . . and the absence of such consent shall be an affirmative defence to be set up in the answer and proved by the defendant."

consisting of himself, his mother, his sister, and the latter's daughter, none of whom was licensed to drive; Gordon was the son by a previous marriage of the wife of Dinkins's brother and lived about one-half mile away; he was thought of as in the family in the sense that he was not watched as a stranger in the house and his going into Dinkins's bedroom was not an occasion for notice; Dinkins was aware that Gordon went into his bedroom for some purpose on the evening of July 1 before the car was driven by Gordon; the keys of the locked car were kept in the bedroom.

We think this testimony, if accepted, with Dinkins's testimony that he asked Gordon to drive the car on June 6, gave a basis for the finding of implied consent, that is, of acquiescence in Gordon's use of the car without the express consent of Dinkins in the particular instance; in any event it could not be ruled, as a matter of law, that the insurer had sustained the burden of proving absence of consent. We have not seen or heard the witnesses and there is no basis for our holding that the judge was plainly wrong in his conclusions.

2. The insurer contends that the decree establishing its liability to Owens is in error, additionally, in that it is not shown that the policy included guest coverage.

It was a part of the plaintiff's case to show this. *Joyce* v. *London & Lancashire Indem. Co.* 312 Mass. 354, 358. See G. L. c. 175, § 113. Owens contends that it is shown by the bill and answer. This is by no means clear, and we pass the point. The obscurity of the pleadings is, however, relevant on the decisive issue stated in a later paragraph.

The bill in numbered paragraphs alleged: (1) Owens was a passenger in Dinkins's car; (2) the insurer had issued a policy as required by G. L. c. 90; (3) Owens was injured by Gordon's gross negligence; (6) by the policy the insurer was obligated to indemnify "any person responsible for the operation of . . . [Dinkins's] automobile with his express and implied consent against loss by reason of liability to pay damages to persons sustaining bodily injuries resulting therefrom . . . ." The insurer's answer

denied the allegations of paragraph 1, admitted the allegations of paragraph 2 "so far as the issuance of the policy is concerned," and, as to paragraph 6, stated only, "The defendants are advised that the said policy speaks for itself."

Inasmuch as G. L. c. 90 by § 34A requires only a policy of insurance which indemnifies in respect of injuries sustained "by any person, other than a guest occupant," paragraph 2 of the bill, with the answer thereto, does not help the plaintiff. If paragraph 6 is to be construed as no more than an attempt to state the legal conclusion of the construction of a written instrument, the insurer's failure to deny its allegations does not conclude the insurer. Paragraph 6 is at best for the plaintiff not a plain allegation of the fact that the policy, expressly asserted to have been a policy required by c. 90, also included a guest coverage provision.

In the course of the examination by the attorney for Aselbekian's executor of his first witness, the insurer's attorney said, "[w]e can agree . . . [that the insurer issued] a policy . . . under Chapter 90 to the vehicle of Edward Dinkins." The attorney's second witness was a claim adjuster for the insurer; he had with him the file in respect of the insurance policy. When this witness was asked about the policy the insurer's attorney said, "we have already agreed that the policy issued by . . . [the insurer] . . . was in effect on the date of the accident." The witness was then excused. The attorney for Owens did not speak in the course of these exchanges. There was no other evidence in respect of the policy.

The judge stated in his findings that as the accident occurred twenty-five days after registration there was doubt whether the physical policy ever issued. He noted that the insurer's answer set out no affirmative defences and noted the answer to paragraph 6 (characterized by him as the "paragraph . . . regarding guest coverage"). He observed also that the insurer stated "in open Court that there was insurance coverage, and that the only issue . . . was . . . express or implied consent." This is not shown in the record. In view of the burden of proof on the plaintiff, the fact alone is not significant that, as the judge noted,

it "was never stated at any time during the trial by . . . [the insurer] that . . . [it] did not have the proper insurance coverage which would deny the plaintiff's recovery on his execution." But we do deem significant and conclusive, in view particularly of the ambiguities of the pleadings and the trial, the statement by the judge that the insurer, "in its memorandum filed at the request of the court, stated that the issue is one of consent and made no mention whatsoever of the fact that there was no insurance coverage to satisfy the payment of the judgment . . . ." The principle applied in section 1 of this opinion is again applicable. As stated in *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 599, "Where a party causes the judge to understand that certain facts are admitted or that certain issues are waived or abandoned he cannot object to the judge's conducting the trial on the basis of that understanding." If the insurer's policy did not include guest coverage and the insurer intended to rely on the failure of the plaintiff to prove his case in this respect, it should not have expressly limited the issues so as to exclude the point, and confirmed the exclusion by silence in respect of it until the case was argued on appeal. It is a reasonable conclusion that the first time the point was brought above the surface was in the judge's findings.

In the circumstances, the judge was justified in concluding that the insurer had at least acquiesced in the position that there was liability to Owens if Dinkins had assented to Gordon's use of the car. The insurer's brief on this point, citing *Joyce* v. *London & Lancashire Indem. Co.* 312 Mass. 354, contends only that because the policy was not in evidence the judge could not go beyond the assumption that it conformed to the mandate of the statute. But the controlling aspect of the case was not given it by an unjustified assumption of the judge; rather, it was given by the assertions and nonassertions of counsel.

The motions to amend the answers are allowed. The final decrees are affirmed with costs of these appeals to the plaintiffs.

*So ordered.*