Finigan, J.
The defendant in this breach of contract action, Aan Anjos (“Anjos”),[1] appeals from a finding for the plaintiff, Bairos Construction, Inc. (“Bairos”), and a dismissal of his counterclaim after a jury-waived trial. The appeal comes before us on the record of the proceedings pursuant to Dist/Mun. Cts. R. A. D. A., Rule 8C.
1. Denial of motion for involuntary dismissal. Following a bench trial on January 31, 2013, the court issued “Findings and Rulings” on March 20, 2014 in favor of Bairos, awarded Bairos damages in the amount of $15,475.91, and dismissed the defendant’s counterclaim. The defendant appeals the denial of his motion for involuntary dismissal on four grounds, discussed further below. The standard of review of the denial of a Mass. R. Civ. P., Rule 41 (b) (2), motion for involuntary dismissal is whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Sonogram of New England, Inc. v. Metropolitan Prop. & Cas. Ins. Co., 2002 Mass. App. Div. 68, 70-71, quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). We summarize the relevant evidence taken from the record in the light most favorable to the plaintiff. Estate of Marie Bryant v. Bryant, 2010 Mass. App. Div. 160, 162.
In April of 2008, Anjos found himself in a bind — the septic system of the automobile dealership he operated on Division Street in Pawtucket, Rhode Island adjacent to the Blackstone River had failed. The defendant had been ordered by city authorities to tie into the municipal sewer system and had been fined $3,000.00 by the State of Rhode Island Department of Environmental Management in connection with the failure.
At a family gathering, Anjos mentioned his plight to his brother, Arlindo. Arlindo was familiar with Bairos and agreed to contact Isidro Bairos (“Isidro”), the principal of Bairos, to see whether he would be willing to perform the necessary work. Isidro had been in the construction business for twenty-five to thirty years. His work included *164 excavation and installation of water and sewer lines, and he owned various equipment to conduct his business, including excavators, backhoes, trucks, and tools. Isidro had previously done work for Arlindo, who operated a laundry business, but never for the defendant
In April of 2008, Isidro and the defendant met at the defendant’s property to walk the site and discuss the work necessary to install the underground sewer line. The terms of the contract, that Bairos would install the line at a cost of $21,000.00, were later agreed upon in a telephone conversation between Isidro and Anjos. The agreement was memorialized in a proposal prepared by the plaintiff, dated April 25, 2008, which called for a down payment of one-half of the contract price at the start of the project with the balance due upon completion.
Per the defendant’s instruction, Isidro gave the proposal to Arlindo in order to obtain the defendant's signature and down payment. On the morning of April 30, 2008, Arlindo returned with the proposal signed by the defendant but without the down payment. When questioned concerning the whereabouts of the down payment, Arlindo assured Isidro the defendant would deliver the check later that day. Based on Arlindo’s assurance, Bairos commenced work on the project.
After two days of effort, during which Bairos encountered a series of underground obstacles while attempting to install the line, Bairos ceased work on the project. Despite assurances to the contrary, the defendant never delivered the down payment called for by the contract. Bairos likewise never installed the sewer line, nor did anyone else — the State of Rhode Island ultimately took the site by eminent domain. In July of 2011, Bairos brought this action in a complaint for “goods and services rendered” for $17,269.45, plus costs and interest, blaming the defendant for the failure of the contract. The defendant denied he breached the contract and raised a counterclaim that the plaintiff had breached the agreement by failing to install the sewer line.
A. Claim of nonperformance by Bairos. Neither party to this litigation disputes that the April 25,2008, agreement constituted a contract between the parties, and further, both are in agreement that a breach occurred. The defendant contends that it was Bairos, and not the defendant, who breached the contract. Under Massachusetts law, a material breach occurs when there is a breach of “an essential and inducing feature of the contract[].” Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930). We find no error in the trial court’s finding that the defendant's failure to pay the agreed upon one-half of the contract price prior to the plaintiff’s commencing work was a material breach of the agreement, excusing performance. See Mark Bombara Interior Design v. Bowler, 446 Mass. 413, 417-418 (2006) (homeowner’s refusal to pay interim invoice of labor and materials provided pursuant to contract justified termination of contract by designer and contractor).
B. Failure to prove damages. Where parties contract for construction work, and the recipient of the contracting services breaches the contract or prevents the contractor from completing the agreed upon work, the contractor may sue the recipient of his services for breach of contract if the recipient refuses to pay for the work done. The measure of damages may be either the difference, if any, between what it would have cost him to complete the work according to the contract and the total contract price, or in the alternative, the fair value of his services. Dalton v. American Ammonia Co., 236 Mass. 105, 108 (1920); Gaffey v. United Shoe Mach. Co., 202 Mass. 48, 53 (1909); Brown v. Woodbury, 183 Mass. 279, 282 (1903). In any event, the damages are not *165 to exceed the original contract price. Although not expressly stated, the trial court’s award of damages was in accord with the first method described above. We see no error in this calculation.
C. Claim that Anjos did not breach the contract. The defendant did not dispute at trial that he failed to deliver the deposit check prior to commencement of work. In support of his position that the failure to provide the deposit did not constitute a breach, the defendant argues the plaintiff waived that contractual requirement by beginning work. It is well settled that a party to a contract may waive a condition to his own performance of a contractual promise. Restatement (Second) of Contracts §84 (1981); McCarthy v. Tobin, 429 Mass. 84, 88 (1999) (“Conditions... may be waived.”). Whether a condition has been waived is a question of fact. Lancaster v. General Acc. Ins. Co. of Am., 32 Mass. App. Ct. 925, 926-927 (1992), S.C., 413 Mass. 1007 (1992). No explicit waiver occurred in this case, e.g., the plaintiff and the defendant had no written or verbal communication concerning a waiver. Where a waiver is not explicit, there must be clear, decisive, and unequivocal conduct indicating that a party would not demand adherence to contractual requirements. KACT, Inc. v. Rubin, 62 Mass. App. Ct. 689, 695 (2004).
The facts, as found by the trial judge, do not support a finding that a decisive and unequivocal waiver took place. Bairos began work on the assurance received from Arlindo that an express term of the contract, delivery of the down payment, would be met. At trial, the defendant took pains to establish that Arlindo was not his agent, a finding accepted by the trial court. In light of that position, the defendant is hard pressed to argue now that the plaintiff waived a material condition of the contract because he relied on the statements of Arlindo, which ultimately proved false. Bairos started the job without the required down payment, not because Bairos waived that requirement, but to the contrary, on the belief the condition would be fulfilled. Arlindo had acted as the intermediary between the parties and delivered the signed contract Understandably, Bairos relied on Arlindo’s statement, introduced over objection, that the defendant would personally deliver the down payment check called for by the contract. Because that statement was not offered for the truth of the matter asserted, it was not hearsay, as discussed further below. See Mass. G. Evid. §801 (2015).
D. Frustration of purpose or impossibility of performance. The doctrine of frustration of purpose provides that an obligor under a contract may claim that some circumstance has so destroyed the value to him of the other party’s performance as to frustrate his own purpose in making the contract. Chase Precast Corp. v. John J. Paonessa Co., 409 Mass. 371, 375 (1991). Similarly, in order to maintain a defense of impossibility of performance, a defaulting party must show that an unanticipated circumstance has made performance of the promise vitally different from what reasonably should have been within the contemplation of the parties. Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 485 (1988). The defendant argues the difficulties encountered by Bairos in installing the sewer line were not so insurmountable so as to excuse Bairos from performance of the contract. The trial court agreed, and we need not discuss it further here.
2. Errors of law. The defendants second argument on appeal is that certain of the trial courts findings were in error because the findings were based upon inadmissible evidence. An appellate court will set aside such findings only if they are “unsupported by the trial evidence or tainted by error of law.” Sullivan v. Ross, 2002 Mass. App. *166 Div. 60, quoting Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. Appellate courts may not disregard or set aside a trial judge’s findings unless they are, in fact, “clearly erroneous.” Mass. R. Civ. P., Rule 52(c). “If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge’s choice is not clearly erroneous.” W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993).
The defendant objected at trial to testimony of Isidro regarding statements made by Arlindo, who did not testify at trial. The defendant now asserts the admission of those statements was error because they constitute hearsay and the trial court erred in finding Isidro justifiably relied on those statements, because Arlindo was not acting as agent of the defendant. The statements were not hearsay, however, because they were not offered for the truth of the matters asserted. See Mass. G. Evid. §801 (2015). The statements, in essence, were that the defendant would personally deliver the deposit check and would visit the site after problems arose. Those statements proved to be untrue and ultimately spawned this litigation. Rather than being offered for the truth of the matters asserted, the statements were offered presumably to explain why Isidro took certain action. See Glassman v. Barron, 277 Mass. 376, 382 (1931) (not hearsay when conversation offered only to prove occurrence of conversation and not truth of declaration).
The defendant argued, and the trial court agreed, that Arlindo was not acting as the agent of the defendant. To the extent that the trial court relied on statements made by Arlindo that explained actions taken by the plaintiff, we find no error. With respect to subsidiary factual findings made by the trial court, the standard of review is not whether the appellate court would have reached the same result as the trial judge, but whether, on the entire evidence, the reviewing court is “left with the definite and firm conviction that a mistake has been committed.” Buster v. George W. Moore, Inc., 438 Mass. 635, 643 (2003), quoting Starr v. Fordham, 420 Mass. 178, 186 (1995). The trial court’s necessary subsidiary findings were plainly supported by the testimony.
Judgment affirmed.

 The defendant’s brief indicates that the plaintiffs pleadings misidentified the defendant as “Aan Anjos” and that his true name is Alfredo M. DosAnjos. We refer to the defendant by the name shown on the complaint.